**Arlene VIOLET, In her Capacity as Attorney General of the State of Rhode Island**

v.

**Warren V. PICILLO, Sr., et al.**

Civ. A. No. 83–0787 P.

United States District Court,
D. Rhode Island.

Nov. 20, 1986.

Susan Squires, Atty. Gen.'s Office, Providence, R.I., for plaintiff.

John Dolan, Richard Linn, Providence, R.I., James Russell, Cleveland, Ohio, John Cuzzone Jr., Providence, R.I., Dominick Presto, Rutherford, N.J., John Bomster, Deming Sherman, Providence, R.I., Harriet Sims Harvey, Englewood, N.J., Anthony Muri, Alden Harrington, Harold Krause, James Murphy, Providence, R.I., Harold Hestnes, Boston, Mass., Benjamin White, Providence, R.I., James Russell, Orlando, Fla., Richard Boren, Christopher Little, Providence, R.I., Leif Sigmond, Oceanport, N.J., C. Russell Bengston, A. Lauriston Parks, Barbara Cohen, Gregory Benik, Providence, R.I., William G. Ballaine, Siff & Newman, New York City, Dean N. Temkin, Providence, R.I., Richard Ricci, Lowenstein & Sandler, Roseland, N.J., John Baglini, Providence, R.I., for defendants.

## OPINION AND ORDER *

PETTINE, Senior District Judge.

This action is brought by the Office of the Attorney General of Rhode Island to recover cleanup costs incurred as a result of its efforts to clean up large quantities of hazardous chemical waste alleged to have been illegally dumped at the Picillo farm in Coventry, Rhode Island. In addition to her own cleanup, monitoring and closure costs, the plaintiff seeks recovery for damage to the state's natural resources, the alleged result of waste disposal at the Picillo site. The plaintiff brings suit pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq. The plaintiff has named thirty-five parties as defendants, including owner-operators of the site, parties who allegedly transported waste there, parties alleged to have arranged for their waste to be transported to the site, and parties alleged to have produced waste deposited at the site.

Currently before this Court is a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) filed by the defendant Olin Corporation ("Olin"). Olin seeks summary judgment dismissing the CERCLA claim with prejudice. Olin, a "generator" defendant, is alleged to have produced hazardous industrial wastes and arranged for the waste's transport to the Picillo site. Essentially, Olin argues in support of its motion that it may not be held liable under CERCLA because it did not "arrange" to have its chemical wastes deposited at the Picillo site. Olin contends that in 1977 it arranged with Chemical Waste Removal, Inc., (a transporter defendant) to have its wastes deposited at a landfill in Cranston, Rhode Island. Olin seeks exculpation on the grounds that it contracted for and directed the disposal of its hazardous chemical residues at a licensed Rhode Island landfill—the Cranston site—and that without its knowledge or consent, the trucks carrying Olin's waste were diverted to the Picillo property in Coventry. Olin argues that CERCLA liability should only attach to those parties who knowingly dispose of hazardous substances at a site subject to cleanup efforts.

For its part, the state argues that Olin is not entitled to summary judgment because, under CERCLA section 107, liability is imposed without fault, therefore, Olin's knowledge (or lack thereof) of the ultimate site of its waste's disposal is irrelevant to Olin's liability. The plaintiff further ar-

---

* After this opinion was substantially prepared, Congress enacted amendments to the Superfund bill. *See* 132 Cong.Rec. H 9032–H 0131 (daily ed. Oct. 3, 1986). While I note that the amendments have caused minor changes in the CERC-LA provisions cited in this opinion, the amendments have not altered the liability scheme of CERCLA section 107 upon which this opinion focuses.

gues that selection of the disposal site is not a prerequisite to CERCLA liability, and because Olin maintained a contractual relationship with its transporter, Olin may not use the transporter's actions as a shield from liability. Moreover, the state contends that far from exculpating Olin, the facts to which Olin has admitted in its motion for summary judgment form the predicate for generator liability under CERCLA. In a separate motion also currently before this court, the plaintiff moves for partial summary judgment against Olin pursuant to Fed.R.Civ.P. 56(c).

In response to the plaintiff's motion for summary judgment, Olin reiterates its position that it did not arrange for the disposal of its wastes at the Picillo site, therefore, it is not liable for costs the state incurred during the cleanup and closure of the facility. Olin also argues that imposition of joint and several liability on Olin is inappropriate on a motion for summary judgment, particularly considering the magnitude of the harm for which Olin would be required to accept full responsibility. Olin further argues the existence of material facts in dispute, and that it should be permitted the opportunity to develop facts on the record to support the assertion of equitable defenses on its behalf. Both motions for summary judgment are the subject of decision today.

## I. FACTUAL BACKGROUND

This case arises from the chemical catastrophe of the Picillo pig farm in Coventry, Rhode Island. State environmental authorities discovered this chemical wasteland in 1977 after combustible chemicals caused a dramatic explosion and towering flames to rip through the waste disposal site. After the fire, state investigators discovered large trenches and pits filled with free-flowing, multi-colored, pungent liquid wastes; they also excavated approximately 10,000 barrels and containers in varying states of decay containing hazardous chemical wastes. Eleven of the barrels were specifically traced to the Olin Corporation through identifying markings, labels or other features on the drums.[1] Neither party disputes the route which brought Olin's wastes to the Picillo farm.

During 1977, Olin operated a research center in New Haven, Connecticut. On August 21, 1977, Olin arranged with Chemical Waste Removal, Inc., ("CWR") to deposit at the Capuano Brothers' landfill in Cranston, Rhode Island thirty-eight fifty-five gallon drums of industrial waste material generated at Olin's New Haven facility. Again on September 28, 1977, Olin arranged with CWR to deliver an additional eighty drums of waste to the Capuano Brother's property. At various times during 1977, CWR's drivers were instructed to unload their hazardous cargoes at the Picillo site in Coventry.[2] Olin has admitted that the wastes transported to Rhode Island for disposal in 1977 included one or more of the following substances: HTH samples (oxidizer), Polyols, Isocyanates, Solid Pesticides, fungicides and insecticides, organic liquids including organic acids, inorganic acids, alkaline chemicals, including sodium hydroxide and ammonium hydroxide.

## II. DISCUSSION

### A. *Law of Summary Judgment*

To succeed on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure the moving party

---

1. Twelve generator defendants have been named in this action: American Cynamid Corporation, Ashland Chemical Corporation, Exxon Research & Engineering Company, GAF Corporation, General Electric Company, Hydron Laboratories, Inc., Monsanto Corporation, Morton-Thiokol, Inc., National Starch and Chemical Co., Olin Corporation, Rohm & Haas Company, and Rutgers University. State investigators identified approximately 445 drums and containers as originating with these defendants.

2. While not disputing this scenario, the plaintiff also contends that Olin may have employed Scientific Chemical Processing, Inc. (a transporter defendant) during 1977 to haul Olin's wastes to the Coventry site. Olin neither admits nor denies the possibility that Scientific Chemical Processing also transported Olin-generated waste to the Picillo site.

must first establish the absence of any genuine issues of material fact. In determining the existence of such genuine issues of material fact, the Court must view the record in a light most favorable to the party opposing the motion. *John Sanderson & Co. v. Ludlow Jute Co. Ltd.*, 569 F.2d 696, 698 (1st Cir.1978). All doubts as to the facts or as to the existence of any material fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1602–603, 26 L.Ed.2d 142 (1970).

As a preliminary matter, I must reject Olin's motion for partial summary judgment because, after a careful review of the pertinent statutory provisions and judicial interpretations thereof, I have concluded that Olin's interpretation of the standards for generator liability under CERCLA is fundamentally incorrect. Despite plaintiff's accurate explication of the elements of CERCLA liability, there remain material, disputed factual issues the resolution of which would be improper on a motion for summary judgment. Final judgment must await the full development of a complete factual record at trial.

■ Olin has raised an important issue of fact upon which it is entitled to proceed. Olin contests the plaintiff's allegations concerning the contents of the Olin drums unearthed at the Picillo waste site. In support of her motion for summary judgment, the plaintiff offered the affidavit of John Leo, an employee of the Rhode Island Department of Environmental Management ("DEM") responsible for the daily cleanup and removal operations at the Picillo site. Mr. Leo assumed this position in May 1981. Mr. Leo stated in his affidavit that during the excavation at the Picillo farm, the DEM removed eleven drums bearing Olin markings and labels. The DEM found the hazardous wastes isocyanate resin (also known as "isocyanate" or "TDI") and polyether diol (also known as "polyols") in the Olin-marked drums.

Olin refutes the plaintiff's identification of the chemical substances contained in the Olin drums. Olin has supplied the court

with the affidavit of Mr. Richard S. Hendey, Jr., Manager of Olin's Regional Environmental Affairs, who states that to his knowledge, no chemical analyses were performed on the contents of the Olin drums, and that it was impossible to ascertain the contents of the excavated drums solely on visual inspection. Mr. Hendey further affirms that polyols are not "hazardous substances" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14) (1982), the section that defines the substances subject to the Act's control. Mr. Hendey also notes that in deposition testimony, Mr. Leo described the contents of one Olin drum as a "redish viscous material," a description inconsistent with the characteristics of isocyanate resin. This Court will not deny Olin the opportunity to examine Mr. Leo as to the method and accuracy of his identification of the Olin chemicals.

Olin also asserts, through the affidavit of Donald A. Gillis, Supervisor of Safety and Loss Prevention at Olin's Chemical Research Facility in New Haven, Connecticut, that Olin regularly reused its disposal drums without removing the drums' original labels. Thus, according to Mr. Gillis, the marks and labels on the drums uncovered at the Picillo site were not necessarily descriptive of the drums' actual contents. Mr. Gillis' attestations raise a crucial question of fact if the DEM relied solely upon the drum's labels to identify their chemical contents.

Summary judgment is a drastic remedy when it is used to impose joint and several liability on a defendant such as Olin. As one court has noted, "[C]are must be taken by the courts in imposing joint and several liability upon what may be a relatively small contributor to the waste site because of inherent unfairness." *Idaho v. Bunker Hill Co.*, 635 F.Supp. 665, 677 (D.Idaho 1986). For this Court to impose liability on Olin before it has had an opportunity to develop the facts supporting its defense would manifest certain inequity. A court must exercise utmost care and caution in disposing of such complex cases on motion for summary judgment. *United States v.*

*Chem-Dyne Corp.,* 572 F.Supp. 802, 810 (S.D.Ohio 1983) (denying a motion for summary judgment on the issue of joint and several liability in a complex hazardous-waste case).

As the foregoing discussion indicates, both parties' motions for summary judgment must be denied; pinpointing unresolved factual disputes ends the summary judgment inquiry. However, in light of the conflicting standards for liability which the parties have proposed, I write further to outline and clarify the proper liability standards under CERCLA. I trust that my effort will assist the parties in their preparation for trial.

### B. *Generator Liability Under CERCLA Section 107*

Section 107 of CERCLA defines liability for purposes of the CERCLA statute. Under section 107, four classes of individuals may be held liable for cleanup costs associated with hazardous waste control: 1) the owner and operator of a vessel or facility; 2) owners or operators of facilities at which hazardous wastes are disposed; 3) any person who by contract, agreement, or otherwise arranged for transport to or disposal or treatment of hazardous wastes at a facility owned by another; and 4) any person who accepts or accepted any hazardous substance for transport to disposal or treatment facilities. The liability of generator defendants is covered in the third category of liable parties. The precise language of section 107(a)(3) states:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned by operated by another party or entity and containing such hazardous substances ... (4) ... from which

there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

> (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
>
> (C) damages for injury to, destruction of, or loss resulting from such a release.

42 U.S.C. § 7607(a)(3) (1982).

The ambiguity of this provision is apparent upon close inspection. As one court has noted, the literal terms of the statute could be interpreted to impose liability on a waste generator who arranges for waste disposal by contract or agreement, but who never actually delivers the waste to a disposal facility. *See United States v. Wade,* 577 F.Supp. 1326, 1332 (E.D.Pa.1983). CERCLA is a hastily-drawn statute quickly passed through a lame-duck Congressional session. *See* Developments, *Toxic Waste Litigation,* 99 Harv.L.Rev. 1458, 1465 & n. 1 (1986); *U.S. v. Price,* 577 F.Supp. 1103, 1107 (D.N.J.1983); *United States v. Mottolo,* 605 F.Supp. 898, 902 (D.N.H.1985) ("CERCLA has acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative history."). Nonetheless, Congress intended broad judicial interpretation of CERCLA in order to give full effect to two important legislative purposes: to give the federal government the tools necessary for a prompt and effective response to hazardous waste problems and to force those responsible for creating hazardous waste problems to bear the cost of their actions. *See* S.Rep. No. 848, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1 A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), at 320 (1983); H.R. Rep. No. 1016, 96th Cong., 2d Sess. pt. 1, 25 (1980), *reprinted in* 2 A Legislative

History of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (Superfund), at 56 (1983); *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1122 (D.Minn. 1982).

After stripping section 107(a)(3) of its excess verbiage, Courts have generally held that liability under section 107(a)(3) requires proof of four basic elements: 1) that the generator disposed of hazardous substances;[3] 2) at a facility[4] which contains at the time of discovery hazardous substances of the kind the generator disposed; 3) there is a release[5] or a threatened release of that or any hazardous substance; 4) which triggers the incurrence of response[6] costs. *See United States v.*

3. "Hazardous substance" is defined in section 101(14) as:

> (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317 (a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas);

42 U.S.C. § 9601(14) (1982).

4. The statute defines "facility" as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel;

42 U.S.C. § 9601(9) (1982). Essentially, a "facility" is simply anywhere hazardous wastes come to be located. *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 185 (W.D.Mo. 1985); *New York v. General Electric Co.*, 592 F.Supp. 291, 295 (N.D.N.Y.1984).

5. CERCLA section 101(22) defines "release" as:

> any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment....

42 U.S.C. § 9601(22) (1982).

6. "Response" means "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25) (1982). Section 101(23) defines "remove" or "removal" as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or a threat of release....

42 U.S.C. § 9601(23) (1982). "Remedy" or "remedial action" is defined in section 101(24) to mean:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances or contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and run-off, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the health and welfare and the environment....

42 U.S.C. § 9601(24) (1982). Response costs have been held to include:

*Wade,* 577 F.Supp. 1326, 1333 (E.D.Pa. 1983); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 190 (W.D. Mo.1985); *United States v. South Carolina Recycling and Disposal, Inc.,* *("SCRDI")* 14 Envtl.L.Rep. (Envtl.L.Inst.) 20272, 20274 (D.S.C. Feb. 23, 1984); *see also United States v. Ward,* 618 F.Supp. 884, 893–94 (E.D.N.C.1985).[7]

▪ Courts have universally acknowledged that in enacting section 107 Congress created a strict liability scheme. *See New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985) (liability under CERCLA is unequivocally strict liability); *United States v. Conservation Chemical Co.,* 619 F.Supp. at 204; *United States v. Ward,* 618 F.Supp. at 893; *United States v. Northeastern Pharmaceutical and Chemical Co.,* *("NEPACCO")* 579 F.Supp. 823, 844 (W.D.Mo.1984); *SCRDI,* 14 Envtl. L.Rep. at 20274, *United States v. Chem-Dyne Corp.,* 572 F.Supp. at 805; *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1140 n. 4 (E.D.Pa.1982). I am in accord with the conclusion of these courts. CERCLA section 101(32) defines CERCLA liability as being consistent with the liability standards governing section 311 of the Clean Water Act, 33 U.S.C. § 1321 (1982). *See* 42 U.S.C. § 9601(32) (1982). Courts have interpreted Section 311 of the Clean Water Act to define a standard of liability without fault. *See, e.g., United States v. LeBoeuf Bros. Towing Co.,* 621 F.2d 787, 789 (5th Cir.1980); *Steuart Trans. Co. v. Allied Towing Corp.,* 596 F.2d 609, 613 (4th Cir.1979); *United States v. Tex-Tow, Inc.,* 589 F.2d 1310 (7th Cir.1978); *Burgess v. M/V Tamano,* 564 F.2d 964, 982 (1st Cir.1977), *cert. denied,* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978); *United States v. Bear Marine Services,* 509 F.Supp. 710, 714 (E.D.La.1980). Moreover, the legislative history is clear that Congress understood judicial interpretations of section 311 to impose strict liability and intended that standard to be incorporated as the liability standard under CERCLA. *See* S.Rep. No. 848, 96th Cong., 2d Sess. 34 (1980), *reprinted in* 1 A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), at 341 (1983) (S. 1480—the CERCLA bill in the Senate—represents an attempt to fill gaps left by other federal strict liability statutes—including section 311 of CWA— which respond to and compensate victims of hazardous substance release); 126 Cong. Rec. S14964 (daily ed. Nov. 24, 1980) (remarks of Sen. Randolph) ("[W]e have kept strict liability in the compromise, specifying the standard of liability under § 311 of the [CWA]; that is, strict liability."). Thus, if the plaintiff is able to prove at trial the statutory elements of section 107(a)(3), Olin may be held liable without proof of knowledge or intent; CERCLA section 107 is a strict liability scheme.

### 1. Olin's Causation Argument

▪ Olin posits the theory that because it did not select the site at which its wastes were discovered, it did not "cause" the harm at the Picillo site within the meaning of section 107(a)(3). Olin contends that for strict liability to be imposed under CERC-

(a) investigations, monitoring and testing to identify the extent of danger to the public health or welfare or the environment;
(b) investigations, monitoring and testing to identify the extent of the release or threatened release of hazardous substances;
(c) planning and implementation of a response action;
(d) recovery of the costs associated with the above actions, and to enforce the provisions of CERCLA, including the costs incurred for the staffs of the EPA and the Justice Department.
*United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 186 (W.D.Mo.1985) (quoting *United States v. Northeastern Pharmaceutical and Chemical Co.,* 579 F.Supp. 823, 850 (W.D.Mo. 1984)).

7. As the *Ward* court pointed out, generator liability includes the requirement that the generator be "person" within the statutory definition. Section 101(21) defines "person" as:

an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body....
42 U.S.C. § 9601(22) (1982). Clearly, this requirement is not difficult to meet.

LA, the plaintiff must prove some relationship between the generator and the affected site, or at least some responsibility on the part of the generator for the wastes reaching the site. Olin argues that the systematic diversion of its wastes from the Cranston site (which Olin selected) breaks the causal link necessary for CERCLA liability. I must reject Olin's contentions as running counter to the weight of established judicial precedent, legislative history and common sense.

Several courts have specifically rejected Olin's position that CERCLA liability requires that the generator defendant choose the site at which his wastes were finally disposed. In *United States v. Conservation Chemical Co.*, the district court rejected a defendant's site-selection argument, noting that the language of CERCLA does not require that the generator arranged for disposal at "*the* facility from which there is a release." Rather, CERCLA requires only that the generator arrange for disposal "at *any* facility owned or operated by another party" from which there is a release. *United States v. Conservation Chemical Co.*, 619 F.Supp. at 234 (emphasis in original). The Court in *Conservation Chemical* followed *United States v. Wade*, in which the Court flatly rejected the precise argument that Olin here advances. In *Wade*, the Court stated:

> I also reject the arguments that the government must establish that the generator selected the site at which the wastes were dumped and that the transfer of ownership to [the transporter] at the time of pickup for disposal absolves the generator of liability. Neither argument finds any support in the statute.

*United States v. Wade*, 577 F.Supp. at 1333 n. 3, *quoted in United States v. Conservation Chemical*, 619 F.Supp. at 234.

In *United States v. Ward*, the Court rejected a generator defendant's argument that in order to be held liable under CERCLA section 107(a)(3), the generator must know where the transporter intends to deposit the waste. Characterizing the defendant's position as "unfounded," the *Ward* court noted that CERCLA merely requires that the generator "arranged for" disposal of its waste; section 107 does not require that the arrangement include knowledge of the ultimate disposal site. *United States v. Ward*, 618 F.Supp. at 895. Finally, in *Missouri v. Independent Petrochemical Corp.*, a generator sought to escape CERCLA liability because it had not arranged to have its wastes transported to a site subject to the state's cleanup efforts, but rather had contracted for disposal at a site from which the wastes had been removed after deposit. The Court rejected the defendant's contentions and held that despite the defendant's selection of an alternative disposal site, the plaintiff had stated a valid cause of action against the defendant. *Missouri v. Independent Petrochemical Corp.*, 610 F.Supp. 4, 5 (E.D. Mo.1985).

In support of its erroneous interpretation of section 107, Olin cites legislative history which refers to a "causation" element in the liability scheme. Olin relies upon language in the original House bill which imposed liability on "any person who caused or contributed to the release." H.R. 7020, 96th Cong. 2d Sess. § 3071(a)(1)(C) (1980), *reprinted in* 2 A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), at 39 (1983). The Committee Report accompanying the House CERCLA bill stated that the House Committee intended the usual common law causation principles to apply to CERCLA and that

> the mere existence of a generator's or transporter's waste in a site with respect to which cleanup costs are incurred would not, in and of itself, result in liability under Section 3701. The Committee intends that for liability to attach under this Section, the plaintiff must demonstrate a causal or contributory nexus between the act of the defendant and the conditions which necessitated response action under Section 3041.

H.R.Rep. No. 1016, 96th Cong. 2d Sess. 33 (1980), U.S.Code Cong. & Admin.News 1980, pp. 6119, 6136, 6137, *reprinted in* 2

A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), at 64 (1983).

Olin acknowledges that Congress never enacted this version of the CERCLA bill, but argues that CERCLA as passed retained the causation requirement advanced by Olin. I disagree. In divining the congressional intent behind the liability provisions of CERCLA, it is appropriate to look at the legislative history behind S. 1480, the Senate bill upon which section 107 was based. This compromise version to which the House agreed, contained none of the causation language upon which Olin relies; instead, the statute defined classes of parties whose liability is defined without reference to causation or contribution. *See New York v. Shore Realty Corp.*, 759 F.2d at 1044; S. 1480, 96th Cong. 2d Sess. § 4(a) (1980), *reprinted in* 1 A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), at 485 (1983). I am therefore unwilling to rely upon the legislative history cited by Olin, agreeing with the *Wade* court that "the liability provision which was ultimately enacted bears no real resemblance to the House-passed bill to which [H.R.Rep. No. 1016] refers. *Wade,* 577 F.Supp. at 1334.

▮ Olin's causation argument ignores the structure of CERCLA which sets forth a strict liability scheme in section 107(a) and enumerates affirmative defenses to liability—each based upon causation—in section 107(b). *See New York v. Shore Realty Corp.*, 759 F.2d at 1044. Thus, Olin's interpretation of CERCLA liability—which includes a causation element—would reduce the CERCLA defenses to statutory surplusage. *See id.* Absent congressional directives to the contrary, this Court will not construe a statute in a way which will render some of its provisions superfluous. *See id.*

Olin's interpretation of section 107(a) runs afoul of basic notions of common sense. Olin's standard of CERCLA liability would exculpate the generator who specifies a disposal site as part of his arrangement with his transporter, but who does not exercise adequate supervision to ensure the waste's disposal at the specified site. Conversely, Olin's interpretation of CERCLA liability would require a Court to impose liability on a generator who carefully chose a disposal site and who properly supervised his transporter's delivery to the specified site. Olin would have this Court thus excuse from liability the generator failing to exercise due care while punishing the one who is careful. Olin has managed to contort CERCLA completely, exculpating from strict liability a defendant who would certainly be held liable even under a negligence standard.

CERCLA section 107 requires only a minimal causal nexus between the defendant's hazardous waste and the harm caused by the release at a particular disposal site. CERCLA only requires that the plaintiff prove by a preponderance of the evidence that the defendant deposited his hazardous waste at the site and that the hazardous substances contained in the defendant's waste are also found at the site.[8] *See United States v. Wade*, 577 F.Supp. at

---

8. Olin's causation argument diverges somewhat from the generator's usual contentions on the causation question, although the same logic requires rejection of both arguments. In several cases, generators have argued that in order to establish CERCLA liability, the plaintiff must demonstrate a causal nexus between the generator's wastes and the costs incurred in cleanup. This argument is premised on the traditional tort concept of proximate causation. *See, e.g., United States v. Wade,* 577 F.Supp. 1326, 1331 (E.D.Pa.1983); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 190 (W.D.Mo. 1985); *see also New York v. Shore Realty Corp.,*

759 F.2d 1032, 1044 (2d Cir.1985) (arguing absence of a necessary causal link because the defendant did not own the disposal site at the time the wastes were deposited). As the Court in *Wade* noted, to require the plaintiff to "fingerprint" the wastes is to neutralize the force of the liability provisions. The generator receives sufficient protection by requiring the plaintiff "to prove that a defendant's waste was disposed of at the site and that the substances that make the defendant's waste hazardous are also present at the site." *Wade,* 577 F.Supp. at 1332–33.

1333; *United States v. Conservation Chemical Co.*, 619 F.Supp. at 191; *see also New York v. Shore Realty Corp.*, 759 F.2d at 1044 (refusing to read a causation requirement into section 107(a)).

C. *Defenses to Liability under CERCLA Section 107*

1. Statutory Defenses

■ CERCLA section 107(b) enumerates the only defenses to CERCLA liability provided within the statute itself. Only three statutory defenses are available to a defendant otherwise liable under CERCLA. Section 107(b) provides:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b) (1982). In essence, the affirmative defenses outlined in section 107(b) will allow a defendant to evade liability if the release and damage are caused solely by an act of God, or war, or by acts of third parties outside a contractual relationship with the defendant. A defendant may only defend based on the acts of a third party if the defendant has exercised due care in the respect to the hazardous substances concerned *and* took precautions against any acts or omissions of the third party and any consequences foreseeably flowing from those acts or omissions. This final defense, known as "the third-party defense," incorporates general principles of vicarious liability into the CERCLA liability scheme. *See* Developments, *Toxic Waste Litigation*, 99 Harv.L.Rev. 1458, 1548 (1986).

■ The defenses provided in section 107(b) are very narrow defenses; they require that the release and damage be caused *solely* by acts of God, war, or acts of omissions of a third party. These affirmative defenses essentially serve to shift the burden of the proof of causation to the defendants. This causation scheme encourages defendants to mark and dispose of their hazardous wastes with the greatest care; the defenses discourage defendants from carelessly allowing their wastes to run into one large, unidentifiable morass at the waste site, confident in the knowledge that the government must identify the wastes and prove causation. *See id.* at 1544.

■ Olin claims that it is not liable under section 107(a) because the Picillos' and the Capuano Brothers' diversion of Olin's wastes to the Coventry site is a superseding, intervening cause which absolves Olin of liability under section 107(a). Olin argues that the actions of the Picillos and the Capuanos were not reasonably foreseeable by Olin, and that without those parties' independent deviation from Olin's disposal plan, Olin would not have contributed to the Coventry disaster. Olin further theorizes that Congress may have had this precise problem in mind when it drafted the third-party defense.

I must reject Olin's interpretation of the third-party defense as completely inconsist-

ent with the statutory language and structure of section 107(b). First, Olin's argument that the Picillos' and the Capuano Brothers' diversion of Olin's waste is a superseding, intervening cause completely ignores the language of the statute; Olin's interpretation disregards entirely the specific requirements of the defense. Olin would exculpate a defendant on the basis of the acts of third party without requiring proof of the stated statutory elements: 1) that the third party not be in any direct or indirect contractual relationship with one defendant; 2) that the defendant exercised due care with regard to its hazardous waste; and 3) that the defendant took precautions against the third party's acts or omissions and their consequences. I cannot accept Olin's attempt to shortcut section 107(b)'s specific requirements; if Olin intends to employ the third party defense, it must prove all its elements by a preponderance of the evidence.

Second, as Olin notes, the doctrine of superseding, intervening cause describes an act of a third person or other force, which by its intervention, prevents the principal actor from being held liable to another, notwithstanding the principal's prior actions. *See Restatement of Torts 2d*, § 440 (1965). Superseding, intervening cause is a part of the general tort law principle of proximate causation. Olin's argument flows naturally from its view that liability under CERCLA requires proof of causation. However, the doctrine of proximate causation does not apply to CERCLA. *See United States v. Wade*, 577 F.Supp. at 1333–34; *United States v. Cauffman*, 21 Env't.Rep.Cas. (BNA) 2167, 2168 (C.D.Cal. 1984); *United States v. SCRDT*, 14 Envtl. L.Rep. (Envtl.L.Inst.) at 20274; *New York v. Shore Realty Corp.*, 759 F.2d at 1044, *United States v. Price*, 577 F.Supp. at 1114 n. 11. As the Court stated in *United States v. Cauffman*, "There is nothing in the statute which requires that the govern-

ment allege, and prove proximate causation before it is entitled to recover its clean-up costs under Section 107." *United States v. Cauffman*, 21 Envt.Rep.Cas. (BNA) at 2168. Olin's offer of a superseding, intervening cause of the harm at the Picillo site is little more than a futile effort to defend against a nonexistent element of liability. I am compelled to reject this interpretation of the third-party defense.[9]

### 2. Equitable Defenses

In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Olin argues that it is entitled to develop the factual record to support the assertion of equitable defenses. I agree that this Court owes Olin such an opportunity. When bringing a section 107 claim, a plaintiff seeks "the return of monies spent on behalf of others' legal obligation to clean up hazardous waste." *United States v. Conservation Chemical Co.*, 619 F.Supp. at 205. Courts have uniformly recognized that plaintiffs in reimbursement actions seek the equitable remedy of restitution. *Id.; United States v. Mottolo*, 605 F.Supp. at 913 (citing *United States v. Georgeoff*, No. 83–1656A slip op. (N.D.Ohio Aug. 2, 1984); *United States v. Tyson*, No. 84–2663 slip op. (E.D.Pa. Nov. 28, 1984); *United States v. Union Gas Co.*, No. C83–2456, slip op. (E.D.Pa. Aug. 2, 1984) [Available on WESTLAW, DCTU database]; *United States v. Wade*, No. 79–1426, slip op. (E.D.Pa. Feb. 21, 1984); *United States v. Argent Corp.*, No. 83–523 HB, slip op. (D.N.M. Dec. 20, 1983) [Available on WESTLAW, DCTU database]; *United States v. Northeastern Pharmaceutical and Chem. Co.*, No. 80–5066–CV–S–4, slip op. (W.D.Mo. Sept. 30, 1983); *United States v. Reilly Tar and Chem. Co.*, 13 Envtl.L.Rep. (Envtl.L.Inst.) 20897 (D.Minn. June 23, 1983)).

 Because the plaintiff seeks equitable relief, the defendants should not be barred from asserting equitable defenses.

---

**9.** In support of its position, Olin relies upon *Ohio ex rel. Brown v. Georgeoff*, in which the court concluded that general concepts of tort theory would apply to CERCLA liability and thus, intervening cause would serve to negate the causation element of section 107. *Ohio ex*

*rel. Brown v. Georgeoff*, 562 F.Supp. 1300, 1306 (N.D.Ohio 1983). For the reasons outlined in part II B 1. of this opinion, I disagree with that interpretation of CERCLA liability and I respectfully decline to adopt that view.

*See United States v. Conservation Chemical Co.*, 619 F.Supp. at 206 (permitting CERCLA defendants an opportunity to develop the equitable defenses of laches, unclean hands, and estoppel); *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1056 n. 9 (D.Ariz.1984) (defendants permitted to argue, among other defenses, waiver and laches). As the Court in *Mardan* explained, the defenses of section 107(b) cannot be afforded exclusivity without barring defendants from raising affirmative defenses such as *res judicata*, payment, and accord and satisfaction. Thus, Olin and its codefendants may plead equitable defenses on their behalf.[10]

## III. CONCLUSION

▮ In sum, generator liability under CERCLA section 107 requires a showing of four elements of liability: 1) that the generator disposed of hazardous substances; 2) at a facility which contains hazardous substances of the kind the generator disposed; 3) there is a release or a threatened release of that or any hazardous substance; 4) which triggers the occurrence of response costs. Section 107(a) is a strict liability scheme which requires only a minimum showing of causation. The defendant need not have chosen the selection site, nor must the plaintiff prove that the defendant's waste actually caused the ecological harm at the site. Liability under CERCLA is strict.

Liability under section 107(a) is subject to the affirmative defenses in section 107(b). In order to establish the third-party defense under section 107(b), the defendant must prove that 1) the third party acted outside a direct or indirect contractual relationship with the defendant; 2) the defendant exercised due care with regard to its hazardous substances; and 3) the defendant took precautions against the third parties acts or omissions and their consequences. Liability under section 107 may be subject to the assertion of equitable defenses, although this Court will not permit the assertion of laches against a governmental plaintiff.

Because there are material issues between the parties remaining in dispute, both motions for summary judgment are hereby denied.

---

**10.** Laches is not a defense generally available against suit by the government brought to enforce a public right or to protect a public interest. *See Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Courts appear to be divided in allowing a laches defense against the government in CERCLA actions. *See Conservation Chemical*, 619 F.Supp. at 206 (deferring a ruling on the laches defense until the record was fully developed). *But see United States v. Mottolo*, 605 F.Supp. at 909 (ruling that in actions brought by the government in its sovereign capacity, laches will not bar suit). I agree with the Court in *Mottolo*, and rule that laches is not available to the defendants in this case. I note that the case upon which the court in *Conservation Chemical* relies in allowing the development of the laches defense allowed the *government's* use of the defense against a citizen's group. *See Citizens and Landowners Against The Miles City/New Underwood Powerline v. Department of Energy*, 683 F 2d 1171, 1175 (8th Cir.1982); *see also Knox v. Milwaukee County Board of Election Comm'rs*, 581 F.Supp. 399, 402 (E.D.Wisc.1984) (allowing the defendants to develop a laches defense in public interest litigation; *Environmental Defense Fund v. Alexander*, 467 F.Supp. 885, 905 (N.D.Miss.1979) (the doctrine of laches applies to public issue litigation; the government was entitled to assert the defense against an environmental advocacy group). Absent any authority for ruling that laches may apply to this action, I rule that it may not.