UNITED STATES of America

v.

AMERICAN CYANAMID CO.;
Rohm & Haas Co.

C.A. No. 89-0565P.

United States District Court,
D. Rhode Island.

May 31, 1990.

See also 786 F.Supp. 152.

---

Alex A. Beehler and Steve C. Gold, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Deming Sherman, Edwards & Angell, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case is another volley in the longrunning battle to clean up the Picillo Pig Farm, a hazardous waste site in Coventry, Rhode Island. As this Court wrote in an earlier decision involving these defendants and the State of Rhode Island:

> State environmental authorities discovered this chemical wasteland [at Picillo Pig Farm] in 1977 after combustible chemicals caused a dramatic explosion and towering flames to rip through the waste disposal site. After the fire, state investigators discovered large trenches and pits filled with free-flowing, multicolored, pungent liquid wastes; they also excavated approximately 10,000 barrels and containers in varying states of decay containing hazardous chemical wastes.

*Violet v. Picillo*, 648 F.Supp. 1283, 1286 (D.R.I.1986). Of the containers the state discovered, 303 five-gallon cans and 49 fifty-five gallon drums were traced to Rohm & Haas and 10 fifty-five gallon drums to American Cyanamid.[1] This Court, in *O'Neil v. Picillo*, 682 F.Supp. 706 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990), found those two defendants jointly and severally liable to the State of Rhode Island for the state's past and future clean up ("response") costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107, 42 U.S.C. 9607 (1982).

The federal Environmental Protection Agency ("EPA") was not a party in the *O'Neil* litigation, although it shared in the settlement by some of the defendants for their part of the response costs.[2] Now, the United States sues to recover its response costs associated with the clean-up at Picillo Farms, claiming that defendants are liable under CERCLA § 107. After the defendants sought discovery on the issue of their liability, the United States moved for partial summary judgment. It argues that because Rohm & Haas and American Cyan-

---

1. This Court considers any further discussion of the facts underlying this case unnecessary given its full explication of the background in *Violet* and *O'Neil*. For further details, see *Violet*, 648 F.Supp. at 1285–87 and *O'Neil*, 682 F.Supp. at 709, 720–21 (discussing Rohm & Haas's liability), 722–23 (discussing American Cyanamid's liability).

2. The *O'Neil* litigation originally involved thirty-five defendants. The State and the EPA settled with all but five defendants for $5.8 million. The State received 25 percent of that settlement; the EPA received 75 percent. *See O'Neil*, 682 F.Supp. at 709.

amid were found liable to the state under § 107 in *O'Neil*, they are precluded from relitigating their liability in this case under the doctrine of nonmutual offensive collateral estoppel.[3] The defendants retort that such a remedy is unfair because it deprives them of important discovery opportunities and is unwarranted because the United States could have, but did not, join in *O'Neil*.

## NONMUTUAL OFFENSIVE COLLATERAL ESTOPPEL

■ Collateral estoppel, or issue preclusion, prevents relitigation in a second suit of issues actually litigated in, and necessary to the outcome of, a prior suit. *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The defendants here make this Court's task much easier by not contesting the conclusion that their liability was actually litigated in and necessary to *O'Neil;* the Court is convinced that revisiting that issue here would be nothing more than *O'Neil* redux. The sole concern for this Court is whether it should, following the concerns of *Parklane Hosiery*, prevent the United States from invoking collateral estoppel offensively, even though the basic tenets of collateral estoppel are satisfied here.

*Parklane Hosiery* recognized that offensive issue preclusion

> does not promote judicial economy in the same manner as defensive [issue preclusion] does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential de-

fendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

*Id.* at 329–30, 99 S.Ct. at 650–51 (citations and footnote omitted). *Parklane Hosiery* also observed that offensive collateral estoppel could be unfair to a defendant. *See id.* at 330, 99 S.Ct. at 651.

To guard against those two evils, the proliferation of suits and unfairness to defendants, the Supreme Court held that courts have "broad discretion" to determine when they should allow nonmutual offensive collateral estoppel, but that the courts' discretion should be tempered by "a general rule": "[I]n cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *See id.* at 331, 99 S.Ct. at 652.

■ Issue preclusion in this case would not be unfair to Rohm & Haas and American Cyanamid. They had every incentive, given their substantial potential liability, to litigate *O'Neil* vigorously. Moreover, a future suit by the United States was entirely

---

**3.** "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571–72 n. 4, 78 L.Ed.2d 379 (1984). "Nonmutual offensive collateral estoppel" means that the plaintiff in the second suit, here the United States, that is seeking to invoke collateral estoppel was not a plaintiff in the first suit.

The doctrine of mutuality had traditionally limited the use of collateral estoppel. The Supreme Court, in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971), however, abandoned the requirement of mutuality for the purposes of defensive issue preclusion; it similarly abandoned mutuality for offensive issue preclusion in *Parklane Hosiery*.

foreseeable: the United States shared in settlement in the first suit, the EPA joined with the state in trying the clean up Picillo Pig Farm, and the defendants moved, unsuccessfully, to bring the United States in as a party to *O'Neil*.

Finally, the procedural opportunities in both cases are the same. Defendants had ample opportunity to pursue discovery to its fullest and to call all necessary witnesses. This Court is confident that every aspect of defendants' liability was exhaustively explored. Moreover, the burden of proof is the same here as in *O'Neil*.

Defendants contend, however, that collateral estoppel is unwarranted because they will not have "the opportunity to conduct full discovery against the government." *See* Defendants' Memorandum of Law at 10. They claim, without further discussion, that "evidence which was not in the possession of these defendants in the earlier action may be in the possession of the government." *Id.*

■ This Court cannot understand how such evidence, if it existed, could warrant a reopening of *O'Neil*, especially since defendants make no effort in their brief to identify, even generally, such evidence. I ruled in *O'Neil* that the defendants, as generators of some of the hazardous waste at Picillo Farm, were strictly liable, jointly and severally, for the response costs of the state. The only issue different in this case is the existence and size of the response costs the United States has incurred. On that issue, defendants will have every opportunity to pursue discovery.[4]

■ A thornier question is whether the United States' failure to join the first suit should lead this Court to bar it from invoking collateral estoppel here. Even conceding that the United States could have joined the prior suit, however, it is not a typical "wait and see" plaintiff and therefore should not be precluded from invoking collateral estoppel. The EPA acts on behalf of the public in initiating and prosecuting CERCLA claims. The EPA has limited resources on hand with which to pursue CERCLA claims; denying collateral estoppel in this case would require it either to join virtually every CERCLA action in order to protect its ability to sue liable defendants for its response costs or to relitigate the defendants' liability in each suit. Either result would sap the EPA resources and unduly restrict its discretion to spend its resources as it sees fit. *Cf. City of Seabrook v. Costle*, 659 F.2d 1371, 1375 (5th Cir.1981) ("[E]nforcement agencies have only limited resources at their command. The enforcement agencies are duty-bound to allocate those resources in the interest of the general public as they perceive it, not in the causes deemed most important by individual citizens.").

Moreover, as the United States argues, collateral estoppel would support the finality of this Court's determination in *O'Neil* that the defendants would be liable for any future response costs at Picillo Farm. Preclusion would promote the statutory intention that such a "declaratory judgment on liability for response costs or damages ... will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C.A. § 9613(g)(2) (West Supp.1990).

CONCLUSION

This Court cannot see any valid reason to revisit the liability issue so thoroughly litigated in *O'Neil*. The United States' motion for partial summary judgment, based on collateral estoppel, is granted. The disposition of the government's motion forecloses all discovery pertaining to the issue of the liability of defendants; the remaining discovery disputes will be referred to the magistrate for his recommendation.

---

**4.** As an alternative position, defendants petition this Court to delay its decision on collateral estoppel until discovery closes. The costs of discovery are, however, precisely the type of litigation costs collateral estoppel is meant to avoid; allowing discovery to go forward when issue preclusion is warranted would defeat the purposes of that doctrine.