### UNITED STATES of America

v.

### GEPPERT BROS., INC. and Amstar Corporation.

#### Civ. A. No. 85–1338.

United States District Court, E.D. Pennsylvania.

June 30, 1986.

F. Henry Habicht, II, Asst. Atty. Gen., Cyrus S. Picken, Jr., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Margaret L. Hutchinson, Asst. U.S. Atty., U.S. Atty's Office, Philadelphia, Pa., for U.S.

Richard T. Abell, Ambler, Pa., for Geppert Bros.

Robert M. Landis, John P. Mason, Philadelphia, Pa., for Amstar Corp.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

This case arises out of the demolition by defendant, Geppert Bros., Inc. (Geppert), of buildings at two sites. One of the sites was the Amstar Sugar Refinery owned by defendant Amstar Corporation (Amstar).

The buildings at that site were demolished by Geppert, pursuant to a contract with Amstar, starting on February 28, 1985 and continuing until March 10, 1985. The United States, at the request of the Environmental Protection Agency (EPA), brought a civil action against Geppert and Amstar for violations of the Clean Air Act, 42 U.S.C. §§ 7401–7642. The United States alleged that the defendants failed to comply with the regulations controlling release of asbestos, issued pursuant to 42 U.S.C. § 7412(b) & (e), and thus violated the Clean Air Act, 42 U.S.C. § 7413(b). The regulations require that the "owner or operator of a demolition or renovation operation" at a facility containing certain specified amounts of asbestos provide notice to the EPA of the planned demolition and follow specified work practices in removing the asbestos. 40 C.F.R. § 61.145–.147.

The United States has now moved, pursuant to Federal Rule of Civil Procedure 12(f), to strike three of the affirmative defenses, Nos. 3–5, raised by Amstar in its answer to the complaint.[1] The three challenged affirmative defenses raised by Amstar are that (1) Amstar was not an "owner or operator" of the demolition operation; (2) Amstar did not own the buildings being demolished due to its contract with Geppert; and (3) it would be "inequitable, unfair and unjust" to permit the United States to bring this action since the only reason the buildings were demolished was because the United States' trade policies forced Amstar out of business. For the reasons stated below, I will strike the three affirmative defenses. The United States has also moved to dismiss Amstar's counterclaim under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) or 12(c). For the reasons stated below, that motion will be granted and the counterclaim will be dismissed without prejudice.

Federal Rule of Civil Procedure 12(f) provides that:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Rule 12(f) is the "primary procedure" for objecting to an insufficient affirmative defense. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1380 at 782. Although motions to strike are often viewed with disfavor because of their potential to be used as a dilatory tactic, they do serve a useful purpose in eliminating insufficient defenses and thus saving the time and expense which would otherwise be spent in litigating issues which would not effect the outcome of the case. *Narragansett Tribe v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798, 801 (D.R.I.1976). A court can strike an affirmative defense "when it is legally insufficient to prevent recovery under any state of facts reasonably able to be inferred from the well pleaded allegations of the answer." *M.L. Lee*, 36 F.R.D. at 29. If substantial questions of fact or law exist, the motion should not be granted. *United States v. 187.40 Acres of Land*, 381 F.Supp. 54, 56 (M.D.Pa.1974).

■ Amstar's third affirmative defense is that it cannot be liable as the "owner or operator of a demolition operation" where it contracted with another party, Geppert, to do the demolition work. The regulations

---

1. The United States also seeks to strike the three affirmative defenses under Federal Rule of Civil Procedure 12(c). Rule 12(c) allows entry of a judgment on pleadings after the pleadings are closed. A motion under Rule 12(c), however, is not appropriate to challenge Amstar's affirmative defenses since Amstar is not relying solely on the affirmative defenses to contest its liability. Thus, the United States may be unable to recover from Amstar even if I find that the affirmative defenses are without merit. *See M.L. Lee & Co. v. American Cardboard & Packaging Corp.*, 36 F.R.D. 27, 29 (E.D.Pa.1964) (party will be granted judgment on the pleadings only if there are "no disputed facts, which, if proven adversely to the moving party, would defeat recovery").

which Amstar is alleged to have violated, 40 C.F.R. § 61.146 & .147, apply to owners and operators of demolition operations. Amstar argues that since, at most, it merely owned the buildings being demolished, while Geppert did all the actual demolition work, the regulations do not apply to it. This argument, however, is clearly wrong given the EPA's own interpretation of the regulations. In a response to a comment regarding a proposed change to § 61.145, the EPA stated:

One commenter noted that the word "or" between "operators" and "demolition" in § 61.145(e) should be changed to "of." He indicated that the proper wording would show what he believed to be the Agency's intent to limit applicability of the regulations to only "wreckers and renovators" and not to include facility owners and operators.

The commenter is correct that the word "or" should be changed to "of," and this correction has been made. However, the commenter's interpretation that the regulations apply to only "wreckers and renovators" and not to facility owners and operators is incorrect. The general provisions of 40 CFR Part 61 define "owner or operator" as any person who owns, leases, operates, controls, or supervises a stationary source [40 CFR 61.01(1)). The stationary source in this case is the demolition or renovation operation. The demolition or renovation contractor would clearly be considered an owner or operator by "operating" the stationary source. The facility owner or operator, by purchasing the services of the demolition or renovation contractor, acquires ownership and control of the operation and would, therefore, be the "owner" for purposes of this standard. Therefore, the standard applies to both the contractor and the facility owner or operator.

49 Fed.Reg. 13,659 (April 5, 1984). A "facility" is defined in § 61.141 as "any institutional, commercial, or industrial structure, installation, or building (excluding apartment buildings having no more than four dwelling units)." Thus, it is clear that the regulations are intended to apply, and by their plain wording do apply, both to the owner of the building being demolished and the operator of the demolition operation.

■ Courts show "considerable deference" to the interpretation of a statute made by the officer charged with its administration. *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 31 n. 64 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). The same, if not greater, deference should be accorded to the EPA's interpretation of its own regulations.[2] The EPA's interpretation of its own regulations is reasonable in terms of both the language of the regulations and the purpose of the Clean Air Act. The regulations in question apply to "each owner or operator of a demolition or renovation operation." 40 C.F.R. § 61.145. By the use of the word "each," it is clear that the regulation can be applied to more than one party at a given demolition site. "Owner or operator" is defined broadly for purposes of the asbestos regulations as "any person who owns, leases, operates, controls, or supervises a stationary source." 40 C.F.R. § 61.02. A "stationary source" is "any building, structure, facility, or installation which emits or may emit any air pollutant which has been designated as hazardous by the [EPA]." 40 C.F.R. § 61.02. Although a demolition operation is an activity rather than an object, it is an activity that only occurs in relation to a particular object, in this case the buildings being demolished. Thus, the demolition operation itself is the "stationary source" to which the regulations apply since it is the

---

**2.** Amstar seems to challenge the EPA's interpretation of its regulation on the ground that the regulation, as interpreted by the EPA, exceeds the EPA's statutory authority. A challenge to a regulation promulgated pursuant to 42 U.S.C. § 7412, however, cannot be made in an enforcement proceeding. 42 U.S.C. § 7607(b)(2); *United States v. Ethyl Corp.*, 761 F.2d 1153 (5th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986). Furthermore, I find untenable Amstar's argument that the Clean Air Act does not allow regulations controlling hazardous air pollutants to be applied to the owner of a building emitting such pollutants.

demolition of a particular building which the regulations seek to control. The owner of the demolition operation is the owner of the building since it owns the source from which the pollution emanates.

■ Interpreting the asbestos regulations to apply to the owner of a building being demolished also furthers the purposes of the Clean Air Act by insuring that owners of property act responsibly in disposing of their buildings. The regulations prevent the owner of a building from avoiding liability for hazardous substances present in a building by merely contracting with another party to demolish the building. Amstar's third affirmative defense is entirely without legal merit and will be stricken.

■ Amstar's fourth affirmative defense states that "[b]y operation of the terms of the contract between Amstar and Geppert, all buildings to be demolished at the refinery, including any asbestos in them, were owned and controlled solely by Geppert Bros. Inc." The contract, attached as an exhibit to Amstar's answer to the complaint, provides that Geppert will demolish certain "improvements" on Amstar's property and in return will be entitled to the proceeds of the sale of any salvagable materials. Amstar argues that since Geppert was entitled to the proceeds from the sale of the material salvaged from the demolished buildings that Geppert, not Amstar, owned the buildings and that therefore Geppert, not Amstar, was the owner of the demolition operation. This argument is incorrect both in terms of its assumptions as to the legal effect of the contract and as to the applicability of the regulations.

The contract in no way constitutes an agreement to sell the buildings to be demolished to Geppert. The contract is titled "Agreement between Owner and Contractor." Amstar is identified as the "owner" of the premises in question. Amstar entered into the contract to "cause the demolition of certain improvements" located on its property. *See* Agreement Between Owner and Contractor, ¶ B. Amstar retained full ownership of the property. Geppert was only entitled to the proceeds from the sale of salvagable material from the buildings. Obviously this entitlement would only arise after Geppert had demolished the buildings, as it was obligated to do in the contract. Geppert could not in any sense be said to have owned the buildings. Amstar contracted with Geppert to demolish the buildings, not to buy them and thus Amstar, as a matter of law, was the owner of the buildings even after signing the contract with Geppert.

Furthermore, the purpose of the asbestos regulations in question is to insure that buildings containing asbestos are demolished in such a way as to minimize the release of asbestos dust into the air. In furtherance of this goal, the regulations impose obligations on both the owner of the building and the operator of the demolition project. It is clear that Amstar, as owner of both the buildings and the property, contracted with Geppert to demolish and remove the buildings from the property. It would defeat the purposes of the regulations to allow Amstar to avoid its obligations under the regulations merely because it gave Geppert rights to the salvagable material from the buildings. Thus, Amstar's fourth affirmative defense, based on its contract with Geppert, will be stricken.[3]

■ Amstar's fifth affirmative defense is an equitable defense based on alleged wrongdoing by the United States government which led to Amstar having to close its refinery and demolish the buildings. Amstar argues that because the United States' trade policies forced Amstar to go out of business and to demolish the buildings, Amstar cannot be held liable to the United States for any air pollution caused by the demolition. Amstar also argues that the government's hands are somehow

---

**3.** By ruling that Amstar cannot avoid its obligation as the "owner" of the demolition operation through its contract with Geppert, I do not rule on the validity of any indemnity agreement contained in the contract.

unclean because the government has adopted regulations which make Amstar liable for the demolished buildings. I find these arguments to be entirely irrelevant to Amstar's obligation, as the owner of the buildings, to insure that the buildings were properly demolished. The argument is totally without merit. Thus, I will strike Amstar's fifth affirmative defense as irrelevant, wholly ineffective and frivolous.

■ The final challenge raised by the government is to Amstar's counterclaim. Amstar seeks its litigation expenses as well as punitive damages and injunctive relief in its counterclaim. In its brief opposing the government's motion to strike, Amstar states that its counterclaim, is not a tort claim, but rather is an action for costs under 28 U.S.C. § 2412. I thus find it difficult to see how Amstar could be entitled to punitive damages or injunctive relief on its counterclaim. To the extent that Amstar in fact did intend to bring a tort claim for either abuse of process or wrongful use of a civil proceeding, such claim must be dismissed. A claim of abuse of process requires as an essential element either an arrest or seizure. *Sheridan v. Fox,* 531 F.Supp. 151, 154 (E.D.Pa.1982). Neither of these elements has been alleged in the present case and thus any claim for abuse of process must be dismissed. A claim of wrongful use of a civil proceeding, while not requiring an arrest or seizure, does require as an essential element that the allegedly improper proceedings have been terminated in favor of the party bringing the wrongful use of civil proceeding claim. *Sheridan,* 531 F.Supp. at 154. Since the civil action against Amstar has not been concluded, Amstar obviously cannot yet meet this requirement and thus any claim for wrongful use of a civil proceeding must also be dismissed. Similarly any claim for attorney's fees and costs against the government under 28 U.S.C. § 2412(b) can only be brought by a prevailing party. Thus, since no aspect of Amstar's counterclaim is properly before the court at this time, I will dismiss Amstar's counterclaim without prejudice.