**UNITED STATES of America**

v.

**ATLAS MINERALS AND CHEMICALS, INC., et al.**

**Civ. A. No. 91–5118.**

United States District Court, E.D. Pennsylvania.

July 8, 1992.

As Amended Aug. 3, 1992.

Nancy Flickinger, Robin L. Juni, U.S. Dept. of Justice, Washington, D.C., for United States.

Kenneth J. Warren,* Manko, Gold & Katcher, Bala Cynwyd, Pa., for Atlas Minerals.

## OPINION

CAHN, District Judge.

This case involves the cleanup of a landfill located on Dorney Road in Berks County ["the landfill" or "the site"]. Procedurally, this case has followed a path common

---

\* There are many attorneys of record in this CERCLA action, however, only Mr. Warren ar-

gued the Motions which are the subject of this Opinion.

to many CERCLA[1] cases. In 1986, the Environmental Protection Agency ["EPA"] took control of the landfill pursuant to 42 U.S.C. § 9604, and initiated a cleanup. The EPA's activities were paid for out of the "Superfund." *See* 42 U.S.C. § 9611. After initiating the cleanup, the EPA issued a § 9606 order, making the defendants[2] responsible for completing the cleanup. The United States then filed suit against the defendants, seeking to recover approximately $1.5 million in cleanup costs. The defendants, in turn, have filed third party claims for contribution against upwards of fifty third party defendants.[3] In addition to seeking contribution towards the defendants' liability (if any) to the government, the defendants seek contribution towards the approximately $15 million they will have to spend in order to complete the cleanup.

The defendants have also filed counterclaims against the government, and have raised numerous affirmative defenses. The government has moved to dismiss the counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), and to strike many of the affirmative defenses pursuant to Fed.R.Civ.P. 12(f).[4] The court heard oral argument on these Motions on June 15, 1992. For the reasons which follow, the court will strike the challenged affirmative defenses, dismiss the counterclaims, and defer ruling on the defendants' recoupment claims.

## I. AFFIRMATIVE DEFENSES

### A. *Standard for Granting a Motion Pursuant to Fed.R.Civ.P. 12(f)*

Rule 12(f) provides as follows:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). It has been recognized that Rule 12(f) is the primary means by which a plaintiff can defeat affirmative defenses prior to trial. *See United States v. Consolidation Coal Co.,* 1991 Westlaw 333694 at *1 (W.D.Pa. July 5, 1991); *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989); *United States v. Geppert Bros., Inc.,* 638 F.Supp. 996, 998 (E.D.Pa.1986). Although Motions to Strike are not favored, *see American Standard*

---

**1.** The Comprehensive Environmental Response, Compensation, and Liability Act ["CERCLA"], 42 U.S.C. § 9601, *et seq.,* was enacted by Congress in 1980, and was revised in 1986 by the Superfund Amendments and Reauthorization Act ["SARA"]. SARA did not make any substantive changes to § 107, the section under which this suit is brought. *See Violet v. Picillo,* 648 F.Supp. 1283, 1285 n. * (D.R.I.1986).

CERCLA's purpose is to insure that sites contaminated by hazardous waste are cleaned up, and that persons handling or using hazardous substances "internalize" the full costs those substances impose on society and on the environment. *See generally United States of America v. Alcan Aluminum Corp.,* 964 F.2d 252, 257–58 (3d Cir.1992); *State of Ohio ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300, 1312 (N.D.Ohio 1983). In this Opinion, the court will follow the practice of citing both to the codification of CERCLA, *see, e.g.,* 42 U.S.C. § 9607(a), and to sections of CERCLA itself. *See, e.g.,* § 107(a).

**2.** The defendants are parties who the government alleges generated large quantities of hazardous substances which were disposed of at the landfill. It should be made clear that, in a

CERCLA action, the government need not sue every possible defendant. If a defendant believes that the government has omitted a potentially responsible party, the defendant's remedy is to implead the party pursuant to Fed.R.Civ.P. 14, or to file a third party claim; courts will not dismiss the action pursuant to Fed.R.Civ.P. 19 for failure to join an indispensable party. *See United States v. Kramer,* 757 F.Supp. 397, 423 (D.N.J.1991); *United States v. Dickerson,* 640 F.Supp. 448, 450 (D.Md.1986).

**3.** The third party defendants are parties who the defendants allege generated some of the hazardous waste which was deposited at the landfill, or who are alleged to have transported some of the hazardous waste to the landfill.

**4.** This Opinion shall discuss the counterclaims and affirmative defenses in general terms, rather than discussing specific affirmative defenses raised by specific defendants. At the court's request, counsel for the plaintiff and the defendants have stipulated to an exhibit characterizing the challenged defenses. In the Order accompanying this Opinion, the court will rule on the specific defenses included in the stipulation.

*Life & Accident Ins. Co. v. U.R.L., Inc.,* 701 F.Supp. 527, 531 (M.D.Pa.1988); *United States v. Hardage,* 116 F.R.D. 460, 463 (W.D.Okla.1987); *Geppert Bros.,* 638 F.Supp. at 998, they are often granted in CERCLA actions. *See generally Consolidation Coal,* 1991 Westlaw 333694 at *3; *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1442 (W.D.Mich.1989). Granting a Rule 12(f) Motion is proper if the defense does not raise disputed issues of fact or law, *see United States v. Kramer,* 757 F.Supp. 397, 409–10 (D.N.J.1991); *Marisol,* 725 F.Supp. at 836; *Hardage,* 116 F.R.D. at 463; *Geppert Bros.,* 638 F.Supp. at 998, and if it is clear that there are no circumstances under which the defense could succeed. *See Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986); *Hardage,* 116 F.R.D. at 463; *Geppert Bros.,* 638 F.Supp. at 998.

### B. *The Availability of Affirmative Defenses Under CERCLA*

In order to determine what affirmative defenses may be raised, the court must examine 42 U.S.C. § 9607, the section under which the government is attempting to impose liability on the defendants. Section 107 of CERCLA[5] provides as follows:

(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or inciner-

ation vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

the amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

---

**5.** As will be discussed more fully below in Section II of this Opinion, the defendants' counterclaims are also asserted pursuant to § 107(a).

**(b) Defenses**

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607.[6] Based on this language, "[a] strong majority of courts have held that liability under § 107(a) of CERCLA is subject only to the defenses set out in § 107(b)." *Marisol*, 725 F.Supp. at 838. *See also County Line Investment Co. v. Tinney*, 933 F.2d 1508, 1518 n. 15 (10th Cir.1991); *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1378 (8th Cir.1989); *United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Skipper*, 781 F.Supp. 1106, 1110 (E.D.N.C. 1991); *United States v. Azrael*, 765 F.Supp. 1239, 1242 (D.Md.1991); *Kramer*, 757 F.Supp. at 410; *Kelley*, 714 F.Supp. at 1445; *United States v. Mottolo*, 695 F.Supp. 615, 626 (D.N.H.1988); *United States v. Hooker Chemicals & Plastics Corp.*, 680 F.Supp. 546, 557 (W.D.N.Y. 1988); *United States v. Stringfellow*, 661 F.Supp. 1053, 1058 (C.D.Cal.1987); *Violet v. Picillo*, 648 F.Supp. 1283, 1293 (D.R.I. 1986); *United States v. Tyson*, 1986 Westlaw 9250 at *10 (E.D.Pa. Aug. 22, 1986); *United States v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 204 (W.D.Mo.1985); *State ex rel. Brown v. Georgeoff*, 562 F.Supp. 1300, 1305 (N.D.Ohio 1983).[7] These holdings are

---

**6.** It is clear that there is no "de minimis" defense to liability under § 9607(a). *See United States v. Alcan Aluminum Corp.*, 964 F.2d at 260–61 (3d Cir.1992); *Kramer*, 757 F.Supp. at 423; *City of New York v. Exxon Corp.*, 744 F.Supp. 474, 483–84 (S.D.N.Y.1990); *United States v. Tyson*, 1986 Westlaw 9250 at *11 (E.D.Pa. Aug. 22, 1986). If the government can show that a party is responsible for the presence of a hazardous substance at a site, liability will be imposed regardless of the quantity of the hazardous substance which the party is responsible for. Similarly, alleged negligence on the part of the EPA cannot serve as a defense to CERCLA liability. *See In re Paoli Railroad Yard PCB Litigation*, 790 F.Supp. 94, 96–97 (E.D.Pa. 1992); *United States v. Skipper*, 781 F.Supp. 1106, 1112 (E.D.N.C.1991) ("Congress specifically considered and rejected an amendment proposed by Senator Helms that would have added government misconduct and negligence as a separate defense to CERCLA liability."); *Kramer*, 757 F.Supp. at 419 ("the defense that the United States was contributorily negligent, caused the harm at the Site or assumed the risk of harm at the Site, are all insufficient and must

be stricken."); *Consolidated Coal*, 1991 Westlaw 333694 at *2 (congress rejected a proposal which would allow the defense of the EPA's contributory negligence).

It is also clear that, except for one theoretical possibility which will be discussed more fully below, a showing that the EPA's actions were "inconsistent with" the National Conservation Plan ["NCP"] is not a defense to CERCLA liability; at most it can serve to limit the amount of damages that a defendant is liable for. *See Kramer*, 757 F.Supp. at 436; *United States v. Mottolo*, 695 F.Supp. 615, 630 (D.N.H.1988).

**7.** There appears to be one theoretical exception to this rule. As will be discussed more fully in Section I.D. of this Opinion, a party who is liable under CERCLA can avoid having costs imposed on it by showing that the costs (if incurred by the EPA) were "inconsistent with" the National Contingency Plan ["NCP"]. If a party can demonstrate that *all* of the costs the EPA seeks to recover are inconsistent with the NCP, courts will dismiss the case. This is because it would be wasteful to conduct a trial on

predicated on the fact that CERCLA imposes strict liability [8] on parties responsible for contributing to the release of hazardous substances, *see Aceto,* 872 F.2d at 1377; *Monsanto,* 858 F.2d at 167; *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1042 (2d Cir.1985); *Violet,* 648 F.Supp. at 1290 (collecting cases); *Tyson,* 1986 Westlaw 9250 at *2; *Conservation Chemical Co.,* 619 F.Supp. at 191, and the fact that Congress stated that such liability would be imposed "subject *only* to the defenses set forth in [§ 9607(b)]." 42 U.S.C. § 9607(a) (emphasis supplied). This court agrees, and holds that the only defenses to liability under § 9607(a) are those enumerated in § 9607(b).[9]

### C. *The Use of Equitable Defenses Against the Government*

Although some courts have allowed the use of equitable defenses in CERCLA cases, they appear to have done so largely in cases brought under 42 U.S.C. § 9606 (relating to the EPA's power to order parties to undertake response or remedial action). *See Kramer,* 757 F.Supp. at 424–28. "There is a substantial body of case law holding that equitable defenses are not available under § 107 of CERCLA." [10]

*Marisol,* 725 F.Supp. at 844. *See also Smith Land,* 851 F.2d at 90 ("Doctrines such as caveat emptor and 'clean hands,' which in some cases could bar relief regardless of the degree of culpability of the parties, do not comport with congressional objectives. In the words of one district judge 'the "unclean hands" doctrine espoused in *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1057 (D.Ariz.1984), *aff'd,* 804 F.2d 1454 (9th Cir.1986), has no place in CERCLA actions.'") (citations omitted); *Marisol,* 725 F.Supp. at 844; *Stringfellow,* 661 F.Supp. at 1062. *But see Consolidation Coal,* 1991 Westlaw 333694 at *5 (refusing to strike equitable affirmative defenses); *Conservation Chemical Co.,* 619 F.Supp. at 205 (same). These cases rest on the proposition that "equitable principles will not be applied to thwart public policy or the purpose of federal laws." *Kelley,* 714 F.Supp. at 1451. Put another way, "the sovereign is immune from equitable doctrines when it asserts public rights." *Kelley,* 714 F.Supp. at 1451. *See also Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) ("it is well settled that

---

liability only to impose zero damages at a later phase of the trial. *See County Line,* 933 F.2d at 1512; *Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1254 (M.D.Pa.1990). The court labels this exception "theoretical" because it is not aware of any case in which a defendant has been able to prove that *all* of the costs sought by the EPA were inconsistent with the NCP.

**8.** Since CERCLA imposes strict liability, "ordinary" notions of causation are not applicable to CERCLA actions. *See Monsanto,* 858 F.2d at 168; *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985); *Kramer,* 757 F.Supp. at 419–20; *Mottolo,* 695 F.Supp. at 626 n. 7; *Stringfellow,* 661 F.Supp. at 1060–61; *Violet,* 648 F.Supp. at 1294. Specifically, there is no need for the government to show that a particular defendant's waste was released; the government need only show that waste of the same type deposited (or transported) by the defendant was found at a site where there has been a release or a threatened release. *See City of New York v. Exxon Corp.,* 744 F.Supp. 474, 480 n. 10 (S.D.N.Y.1990) (there is no need for a CERCLA plaintiff to "fingerprint" waste in order to establish liability); *Violet,* 648 F.Supp. at 1292 & n. 8 (same); *United States v. Wade,* 577 F.Supp. 1326, 1332–33 (E.D.Pa.1983) (same); *see*

*also United States v. Alcan Aluminum Corp.,* 964 F.2d at 260–61 (3d Cir.1992).

**9.** Those courts which have held that the defenses set forth in § 9607(b) are not exclusive seem to have done so because they feared that, in so doing, they would prevent defendants from arguing, *inter alia,* that they had already paid for the damages, or that the government was otherwise estopped from collecting. *See, e.g., Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1056 n. 9 (D.Ariz.1984), *aff'd,* 804 F.2d 1454 (9th Cir.1986). As the court will set forth below, striking defenses *as to liability* will not prevent defendants from raising the same arguments in the damages phase of the trial. For this reason, the court does not join with those who have refused to preclude defenses not found in § 9607(b).

**10.** As will be explored more fully in Section I.D. of this Opinion, the fact that equitable considerations cannot serve as a defense to CERCLA liability does not mean that a party is prevented from arguing that equitable considerations serve to lessen the amount of damages the party is liable for. *See Kramer,* 757 F.Supp. at 412–13.

the Government may not be estopped on the same terms as any other litigant.") (footnotes omitted); *Chesapeake & Delaware Canal Co. v. United States*, 250 U.S. 123, 125, 39 S.Ct. 407, 407–08, 63 L.Ed. 889 (1918) ("It is settled beyond controversy that the United States, when asserting 'sovereign' or governmental rights, is not subject to either state Statutes of Limitations or to laches."); *United States v. VenFuel, Inc.*, 758 F.2d 741, 761 (1st Cir.1985) ("the traditional doctrine of equitable estoppel does not apply fully in cases against the government.") (citation omitted); *Kramer*, 757 F.Supp. at 427 ("equitable defenses cannot be asserted against the government when it acts in its sovereign capacity to protect the public health and safety.") (citation omitted); *Mottolo*, 695 F.Supp. at 628.

■ This court believes that those courts refusing to allow equitable considerations to serve as a defense to liability under CERCLA have decided the issue correctly. This case is clearly one in which the federal government is asserting public rights, and is implementing an important public policy, namely the cleanup of a hazardous landfill. Further, the statute itself is explicit in stating that the defenses enumerated in § 9607(b) are the only defenses to liability under § 9607(a). For these reasons the court holds that, although equitable considerations might come into play in the damage allocation phase of a CERCLA case, *see Mardan Corp v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1058 (D.Ariz.1984), *aff'd*, 804 F.2d 1454 (9th Cir.1986), their introduction into the liability phase of a CERCLA case is improper. *See Stringfellow*, 661 F.Supp. at 1060 ("The Court has discretion to use equitable factors in apportioning

damages in order to mitigate the hardships of imposing joint and several liability upon defendants who have only contributed a small amount to a potentially large indivisible harm. However, the Court's discretion in apportioning damages among the defendants during the contribution phase does not effect the defendants' liability.").

D. *The Ability of a Court to Take Various Factors Into Account When Apportioning Damages, Even Though Such Factors Cannot Serve as a Defense to Liability*

■ Although a party is liable to the government under CERCLA if the government can prove that the party is a "person" enumerated under § 9607(a) who owned, transported waste to, or generated hazardous waste deposited at, a site, and that the government incurred response costs following a release, *see generally, Kramer*, 757 F.Supp. at 411; *City of New York v. Exxon Corp.*, 744 F.Supp. 474, 480 (S.D.N.Y.1990); *Violet*, 648 F.Supp. at 1289; *Conservation Chemical Co.*, 619 F.Supp. at 184; *United States v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Pa.1983),[11] such a showing will not necessarily entitle the government to recover all of the costs associated with the cleanup of a site from that party. If it can be shown that some (or all) of the costs the government seeks to recover are for actions "inconsistent with" the National Contingency Plan ["NCP"],[12] the government will not be entitled to recovery of those costs.[13] *See United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) ["NEPACCO"]; *J.V. Peters & Co.*

**11.** Since the government must meet only a minimal burden to establish liability under CERCLA, it is clear that the government's complaint does state a claim upon which relief can be granted.

**12.** The NCP is a set of regulations promulgated by the EPA which establishes procedures and standards to be used when responding to actual or threatened releases of hazardous substances. *See County Line*, 933 F.2d at 1511; *Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233, 1238 (M.D.Pa. 1990).

**13.** Demonstrating inconsistency with the NCP is the only way in which defendants can avoid having cleanup costs imposed upon them. The EPA does not have a duty to mitigate damages under CERCLA, *see Kramer*, 757 F.Supp. at 420–21, nor does it have a duty to minimize cleanup costs. *See United States v. American Cyanamid Co.*, 786 F.Supp. 152, 161–62 (D.R.I.1992). In short, unless the EPA's costs are "inconsistent with" the NCP, the costs are presumed to be reasonable. *See American Cyanamid*, 786 F.Supp. at 161–62.

v. Administrator, Environmental Protection Agency, 767 F.2d 263, 266 (6th Cir. 1985); Shore Realty, 759 F.2d at 1047–48; In re Paoli Railroad Yard PCB Litigation, 790 F.Supp. at 97 (E.D.Pa.1992); United States v. American Cyanamid Co., 786 F.Supp. 152, 161–62 (D.R.I.1992); Skipper, 781 F.Supp. at 1110; United States v. Hardage, 750 F.Supp. 1460, 1499 (W.D.Okla.1990); Tyson, 1986 Westlaw 9250 at *2; Conservation Chemical Co., 619 F.Supp. at 186.[14] Although it is difficult for a defendant to meet its burden of making such a showing, see Hardage, 750 F.Supp. at 1499; Dickerson, 640 F.Supp. at 453; Conservation Chemical Co., 619 F.Supp. at 186,[15] doing so will relieve a defendant of the obligation for paying (a portion of the) damages, even though the defendant is still liable to the government. Congress intended this (showing that the government's actions were inconsistent with the NCP) to be the sole method in which a defendant can challenge the propriety of the EPA's cleanup activities. See Peters, 767 F.2d at 266; Skipper, 781 F.Supp. at 1112; Kramer, 757 F.Supp. at 436.

The ability of a defendant in a CERCLA action to defeat some (or theoretically all) of the government's claim for damages even when the defendant is clearly liable for violations of CERCLA allows a court to take into consideration, at the damages phase of a CERCLA trial, many factors which could not properly be considered during the liability phase.[16] See Conservation Chemical Co., 619 F.Supp. at 204 ("[D]efenses based upon the claims that defen-

dants were not negligent or that they exercised due care cannot be used to avoid liability. Under appropriate circumstances, however, such 'defenses' may be relevant to issues of apportionment of liability among the defendants at some later date."). See also United States v. Alcan Aluminum Corp., 964 F.2d at 269–70 (3d Cir.1992); Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86, 89 (3d Cir.1988), cert. denied, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) (discussing the "equitable considerations that may mitigate damages."); Kramer, 757 F.Supp. at 413 ("But as Western Processing observed, consideration of 'equitable factors' only comes into play during the contribution phase and does not affect the liability of each defendant in a section 107 action."); United States v. Moore, 703 F.Supp. 460, 462 (E.D.Va.1988) ("the 'defenses' raised by defendants at issue may be very relevant to issues of apportionment of liability, which will undoubtedly arise at trial."); Stringfellow, 661 F.Supp. at 1062 ("comparative fault, contributory negligence, section 104 related defenses, due care, failure to comply with the national contingency plan, failure to comply with claims procedures under CERCLA section 112, and set-off are not defenses to liability, although they may be relevant factors to consider with respect to damages.").

■ The court's ability to take factors such as the amount and nature of the substances generated by a specific defendant, the care exercised by a specific defendant,

---

**14.** Absent a showing of inconsistency with the NCP, however, the government will be entitled to recover all of its direct and indirect costs, including investigatory, enforcement, administrative, interest, and litigation costs. See NEPACCO, 810 F.2d at 732; American Cyanamid, 786 F.Supp. at 157; Hardage, 750 F.Supp. at 1498–99; United States v. Hardage, 733 F.Supp. 1424, 1432–33 (W.D.Okla.1989).

**15.** It is difficult for a defendant to show that the EPA's actions were inconsistent with the NCP because doing so entails showing that the EPA acted in an "arbitrary and capricious" fashion. See American Cyanamid, 786 F.Supp. at 158; United States v. Hardage, 733 F.Supp. 1424, 1432–34 (W.D.Okla.1989). This is much more

difficult than defeating the recovery sought by a private party under CERCLA. To defeat a private party's claim, a defendant need only demonstrate that the party violated one of the standards or procedures contained in the NCP. See County Line, 933 F.2d at 1513. Since a private party can only recover for actions "consistent with" the NCP, a showing that the NCP was not strictly complied with is sufficient to prevent recovery. See Ambrogi v. Gould, Inc., 750 F.Supp. 1233, 1256 (M.D.Pa.1990) (contrasting the standards for recovery by private parties and the EPA).

**16.** At oral argument, counsel for the government agreed with this proposition. See N.T. (June 15, 1992) at 8.

the consistency of the government's actions with the NCP, and traditional equitable considerations into account when apportioning damages allows the court to answer in the negative the often asked question of whether a party who disposed of a single copper penny in a landfill would be responsible for the costs of cleaning up the entire site. *See Conservation Chemical Co.*, 619 F.Supp. at 196. *See also Alcan*, 964 F.2d at 269–71; *City of New York*, 744 F.Supp. at 484; *Wade*, 577 F.Supp. at 1340–41. When combined with the court's ability to hold that a harm actionable under CERCLA is divisible among several defendants, *see Alcan*, 964 F.2d at 267–69; *Monsanto*, 858 F.2d at 171–72, *United States v. A & F Materials Co.*, 578 F.Supp. 1249, 1254–57 (S.D.Ill.1984), a court's ability to consider these factors insures that individual defendants will pay their fair share of cleanup costs. *See Alcan*, 964 F.2d at 270–71; *Monsanto*, 858 F.2d at 172–73.

### E. *Constitutionality of CERCLA*

■ All courts which have considered the issue have held that the retroactive application of CERCLA does not render the statute unconstitutional. *See Monsanto*, 858 F.2d at 174; *NEPACCO*, 810 F.2d at 732–34; *Kelley*, 714 F.Supp. at 1443–45; *Mottolo*, 695 F.Supp. at 621–22; *Hooker*, 680 F.Supp. at 556; *Tyson*, 1986 Westlaw 9250 at *12; *Dickerson*, 640 F.Supp. at 451; *Conservation Chemical Co.*, 619 F.Supp. at 220–21.

Similarly, CERCLA is not an unconstitutional *ex post facto* law. *See Monsanto*, 858 F.2d at 173–74; *Consolidation Coal*, 1991 Westlaw 333694 at *6; *Kramer*, 757 F.Supp. at 431; *Marisol*, 725 F.Supp. at 845. This is because CERCLA does not impose punishment on those who are found to be in violation of it, and only a criminal law (i.e. a law which imposes punishment) can run afoul of the constitutional prohibition on the enactment of *ex post facto* laws. *See Monsanto*, 858 F.2d at 174–75; *Kramer*, 757 F.Supp. at 431; *Tyson*, 1986

Westlaw 9250 at *15; *Conservation Chemical Co.*, 619 F.Supp. at 214.[17]

Finally, since CERCLA is, in essence, an economic regulation designed by Congress to distribute the costs of certain activities, the law does not violate the Due Process Clause of the United States Constitution. *See Tyson*, 1986 Westlaw 9250 at *13–*14; *Conservation Chemical Co.*, 619 F.Supp. at 216. This is because the burden imposed on the defendants by CERCLA is rationally related to Congress' legitimate goal of protecting the environment and citizenry of this Nation from being harmed by hazardous substances. *Cf. Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 14–16, 96 S.Ct. 2882, 2891–93, 49 L.Ed.2d 752 (1976).

## II. COUNTERCLAIMS

■ The defendants' counterclaims, in a nutshell, allege that, when the EPA took over the landfill in order to initiate a cleanup pursuant to § 9604, the EPA became an "owner or operator" within the meaning of CERCLA, and is therefore subject to liability for any releases of hazardous substances which occurred during its tenure. Specifically, the defendants argue that the EPA's actions in building unlined lakes on the site caused groundwater to collect on, and then leach through, the landfill. These actions, the defendants contend, resulted in increased cleanup costs which should be borne by the EPA.

At oral argument, counsel for the defendants conceded that he could not cite any case in which the EPA had been held liable under CERCLA for activities related to the cleanup of a site. *See* N.T. (June 15, 1992) at 38. This comports with the court's research. Although the court is both aware, and appreciative, of the need for zealous advocacy, the court believes that it is time for the environmental defense bar to stop filing CERCLA counterclaims against the EPA for actions undertaken by the EPA in conjunction with cleanup activities. Such counterclaims are clearly barred. The sole

---

**17.** Similarly, since CERCLA does not impose punishment, it cannot constitute a bill of attain-

der. *See Tyson*, 1986 Westlaw 9250 at *14.

way in which CERCLA defendants can challenge the propriety of the EPA's response and remediation actions is by arguing, in the damages phase of a CERCLA case, that those actions were inconsistent with the NCP. *See Skipper*, 781 F.Supp. at 1113; *Azrael*, 765 F.Supp. at 1246; *United States v. Western Processing Co.*, 761 F.Supp. 725, 728 (W.D.Wash.1991).[18]

It is beyond peradventure that the United States, as a sovereign, is immune from suit unless the party wishing to sue can demonstrate that the United States has consented to be sued. *See Skipper*, 781 F.Supp. at 1111; *Azrael*, 765 F.Supp. at 1244; *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 668 F.Supp. 404, 407 (D.N.J.1987); *United States v. Nicolet, Inc.*, 1986 Westlaw 15017 at *1 (E.D.Pa. Dec. 31, 1986).[19] A court cannot infer that the United States has consented to be sued; a waiver of sovereign immunity must be explicit. *See Paoli*, 790 F.Supp. at 96; *Skipper*, 781 F.Supp. at 1111; *Azrael*, 765 F.Supp. at 1244; *Western Processing*, 761 F.Supp. at 728; *Nicolet*, 1986 Westlaw 15017 at *2. Further, if a waiver of sovereign immunity is found, it must be interpreted narrowly and in favor of the United States. *See Paoli*, 790 F.Supp. at 96; *Skipper*, 781 F.Supp. at 1111; *Azrael*, 765 F.Supp. at 1244; *Western Processing*, 761 F.Supp. at 728.

Although 42 U.S.C. § 9620 does contain a waiver of sovereign immunity, that waiver is limited. *See United States v. Berks Associates, Inc.*, No. 91–4868 Slip op. at 6–7, 1992 WL 68346 (E.D.Pa. March 31, 1992); *New Jersey Department of Environmen-*

*tal Protection*, 668 F.Supp. at 407; *Nicolet*, 1986 Westlaw 15017 at *4. Specifically, the waiver contained in § 9620 only applies to situations in which the government has acted as a business. *See, e.g., FMC Corp. v. United States Department of Commerce*, 786 F.Supp. 471, 485–86 (E.D.Pa.1992) (imposing liability on the United States for the cleanup of a rayon factory when the War Productions Board had taken control of the factory during World War II in order to produce high tenacity rayon yarn for synthetic tires); *Hardage*, 750 F.Supp. at 1507 (ordering the government to pay cleanup costs "based on the amount of waste disposed at the hardage Site by the departments of the federal government."). *See also Kramer*, 757 F.Supp. at 414 (explaining that the fact that the government might be liable for some cleanup expenses because government agencies deposited waste at a site does not alter or affect the course of a § 9607 action). The § 9620 waiver does not extend to situations in which the EPA has undertaken response or remedial actions at a hazardous waste site. *See United States v. Shaner*, No. 85–1372 Slip op. at 11–12, 1992 WL 154652 (E.D.Pa. June 12, 1992); *Paoli*, 790 F.Supp. at 97; *Berks Associates*, No. 91–4868 Slip op. at 3, 1992 WL 68346; *Skipper*, 781 F.Supp. at 1111–12; *Azrael*, 765 F.Supp. at 1244–45; *Western Processing*, 761 F.Supp. at 728. *Cf. United States v. Nicolet, Inc.*, 1987 Westlaw 8199 at *5 (E.D.Pa. March 19, 1987) (examining the Federal Tort Claims Act and determining that "[i]n short, once the EPA has determined that a particular site is one that requires cleanup under CERC-

---

**18.** The defendants will be given an opportunity to prove that the EPA's actions were inconsistent with the NCP in a bench trial to be held on December 28, 1992.

**19.** In *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the Supreme Court held that, when it enacted CERCLA, Congress overrode the states Eleventh Amendment immunity. *See Union Gas*, 491 U.S. at 6–7, 109 S.Ct. at 2276–77; *United States v. New Jersey Department of Environmental Protection*, 1991 Westlaw 208877 *2 (D.N.J. Oct. 8, 1991). *See also CPC International, Inc. v. Aerojet–General Corp.*, 731 F.Supp. 783, 791 (W.D.Mich.1989) (holding the Michigan Depart-

ment of Natural Resources liable under CERCLA for remedial actions which exacerbated the contamination at a site). Although the *Union Gas* court observed that the language Congress used to impose liability on the states under CERCLA was similar to the language Congress used to waive the United States' sovereign immunity, *see Union Gas*, 491 U.S. at 10, 109 S.Ct. at 2279, the *Union Gas* Court did not hold that the waiver of federal sovereign immunity under CERCLA was coextensive with the waiver of state sovereign immunity. For this reason, *Union Gas* is not controlling in this case. *See Azrael*, 765 F.Supp. at 1244.

LA, the EPA must determine how to clean up the site and carry out the clean up. It is clear that the conduct involved in determining which sites to place on the priority list and choosing appropriate cleanup, containment and removal methods, is the type of conduct Congress intended to shield from tort liability.").

The reason that the waiver found in § 9620 does not extend to response or remedial actions undertaken by the EPA is that, when the EPA undertakes such actions, it is not acting like a private party; it is acting to ameliorate a dangerous situation that, but for the prior actions of the generators and transporters of the hazardous waste, would not exist. *See Berks Associates*, No. 91–4868 Slip op. at 4–5; *Skipper*, 781 F.Supp. at 1111; *Western Processing*, 761 F.Supp. at 728–29. "Allowing contribution counterclaims in this situation would undermine Congress' intent to ensure that those who benefit financially from a commercial activity should internalize the health and environmental costs of that activity into the costs of doing business." *Azrael*, 765 F.Supp. at 1245 (citations omitted).[20] Since the defendants are unable to demonstrate that the United States has waived its sovereign immunity, the counterclaims must be dismissed.

## III. RECOUPMENT

■ Although the government's sovereign immunity requires the court to dismiss the defendants' counterclaims, it does not require the court to dismiss the defendants' recoupment claims since such claims do not require a waiver of sovereign immunity. *See Shaner*, No. 85–1372 Slip op. at 20; *Hardage*, 750 F.Supp. at 1511, citing *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir.1982); *Nicolet*, 1986 Westlaw 15017 at *2; *United States v. Gold Mountain Coffee, Ltd.*, 601 F.Supp. 215, 217 (Ct.Intl.Trade 1984). A waiver of sovereign immunity is not necessary be-

cause a recoupment claim simply allows a court to examine an entire transaction, once the government has decided to bring suit. *See Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946); *Shaner*, No. 85–1372 Slip op. at 16; *Hardage*, 750 F.Supp. at 1511.

■ In order to maintain a recoupment claim, a defendant must show the following: 1) that the recoupment claim arises out of the same transaction or occurrence as the government's suit; 2) that the recoupment claim seeks the same type of relief as is sought by the government; and 3) that the claim is purely a defensive setoff, and does not seek affirmative recovery from the government. *See Hardage*, 750 F.Supp. at 1511; *Gold Mountain Coffee*, 601 F.Supp. at 218–19.

■ A recoupment claim does not, however, create a cause of action in its own right. It only allows a party to assert an otherwise allowable claim against the government. *See generally* Geoffrey C. Hazard, Jr., *Civil Procedure* 482–83 (1985) (describing recoupment as allowing a defendant to assert "facts arising out of the transaction sued upon *that would have founded an independent action* in defendant's favor.") (emphasis supplied); 6 Charles A. Wright, *et al. Federal Practice and Procedure* § 1427 (2nd ed. 1990) ("when the United States institutes an action, [the] defendant may assert *by way of recoupment any claim* arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery.") (emphasis supplied). As it has been demonstrated, *supra*, the only way in which an otherwise liable party can avoid having damages imposed on it under CERCLA is to demonstrate that the EPA's actions were inconsistent with the NCP.[21] Since the defendants will not have to pay for any costs

---

**20.** Allowing counterclaims to proceed against the government would also contravene the Congressional intent to impose strict liability under CERCLA, subject only to the defenses set forth in 42 U.S.C. § 9607(b). *See Azrael*, 765 F.Supp. at 1245.

**21.** Since the EPA is not a CERCLA "person" when it is involved in response or recovery actions, sovereign immunity is not the only barrier to imposing § 9607 liability on the EPA. Simply put, the statute itself does not authorize the imposition of such liability.

which are inconsistent with the NCP, it is unclear what the defendants can gain through a recoupment claim.

The court believes that the defendants have pressed recoupment claims for two reasons. The first is to insure that they will have a forum in which to argue that the EPA's actions were inconsistent with the NCP. The court has already decided that CERCLA provides the defendants with such a forum—the damages phase of the trial. The second, and the court believes, more important, reason the defendants have raised recoupment claims is that they allege that the EPA's inconsistent actions caused additional damage. The defendants therefore seek both to avoid having to reimburse the EPA for the costs it incurred in building lakes on the site, *and* to avoid having to pay to remove the water now contained in those lakes.

If the court were to hold that a showing of inconsistency with the NCP vitiated the defendants' responsibility for the consequential and indirect costs arising out of the inconsistent action, the defendants' recoupment claims would be redundant, and could therefore be dismissed. If, on the other hand, the court were to hold that a showing of inconsistency only obviated the need to pay for the inconsistent action, but that the defendants would be required to pay for correcting what had been done, the recoupment claims would allow the defendants to set off these costs against the costs of EPA actions taken consistent with

the NCP. Although, at first glance, the court takes the view that a showing of inconsistency with the NCP would relieve the defendants from any obligation to make payments to correct the inconsistency,[22] and that the defendants' recoupment claims should therefore be dismissed because they would not afford the defendants any additional relief, this issue has not been fully briefed or argued. The court will therefore defer ruling on the defendants recoupment claims until such time as the court decides 1) whether a showing of inconsistency with the NCP relieves the defendants from paying for the indirect and consequential costs of the inconsistency and 2) if the defendants can show that the EPA's actions were, in fact, inconsistent with the NCP.[23]

## IV. CONCLUSION

For the foregoing reasons, the challenged affirmative defenses shall be stricken, and the counterclaims shall be dismissed. The court will defer ruling on the defendants' recoupment claims until the court determines whether the EPA's actions were inconsistent with the NCP, or were otherwise arbitrary and capricious. A bench trial[24] limited to that issue will commence on December 28, 1992. An appropriate Order follows.

**22.** Although the court is without the power to order the EPA to pay money damages to the defendants, *see supra,* Section II, the court could, as it were, order the EPA to clean up its own mess.

**23.** If the court answers the first question in the negative and the second in the affirmative, the court will have to address yet a third question before allowing the recoupment claims to proceed. Although it is clear that, in order to maintain a recoupment claim, the events which form the basis for the recoupment claim must arise out of the same transaction or occurrence as the events which form the basis of the government's claim, there is a dispute as to the exact scope of the necessary "transaction or occurrence." Specifically, some courts have rejected recoupment claims in CERCLA actions, holding that the government's claim arises out of the defendants' (long past) actions in dispos-

ing of waste, and that the proffered recoupment claim arises out of a different transaction or occurrence, namely the EPA's remedial activities. *See Hardage,* 750 F.Supp. at 1519–20. Other courts have taken a wider view of what constitutes a transaction or occurrence, and have allowed recoupment claims to proceed when the defendants allege that the EPA's activities were inconsistent with the NCP. *See Shaner,* No. 85–1372 Slip op. at 19 n. 10. If this court follows *Hardage,* the defendants' recoupment claims will be dismissed; if it follows *Shaner,* they will be allowed to proceed. The court will defer ruling on this third question until it is in a position to answer the first two.

**24.** Since cases arising under CERCLA are equitable in nature, parties have no right to a jury trial. *See NEPACCO,* 810 F.2d at 749; *Dickerson,* 640 F.Supp. at 453.